JACQUES BRODER, Appellant, *v.* TRANS-ATLANTIC NOVELTY COMPANY, INC., Respondent.

(Supreme Court, Appellate Term, First Department, January, 1917.)

Contracts — of employment — performance — actions — damages — evidence — pleading — trial.

> A written contract of employment of plaintiff as traveling salesman for defendant, commencing May 18, 1914, and ending December 31, 1914, provided for the payment of plaintiff's

wages in advance and required repayment by him of any excess of payments to him on his drawing account over the amount of commissions earned. The contract was verbally renewed January 4, 1915, and plaintiff performed his part thereof until May 18, 1915, when without cause he was discharged. In an action to recover, as damages, the sum of fifty dollars a week drawing account for the unexpired term of the contract up to December 31, 1915, plaintiff, the only witness called, testified to the contract, to his performance of its provisions, to the sale of goods, to the payments made and to the amount of his drawing account still unpaid, and rested. *Held,* that a dismissal of the complaint for failure to make out a case on the ground that plaintiff was required to prove what commissions he had earned, or facts which would form a legal basis upon which the amount of his future commissions might be reasonably estimated, was error for which the judgment entered on the dismissal of the complaint will be reversed, and a new trial ordered.

Appeal from a judgment of the City Court of the city of New York in favor of the defendant, entered upon the dismissal of the complaint at the close of plaintiff's case, upon the ground that plaintiff had not proved a cause of action.

Fluegelman & Trosk (Henry Fluegelman and Charles Trosk, of counsel), for appellant.

Adolph and Henry Bloch (Charles E. Travis, of counsel), for respondent.

Whitaker, J. On January 14, 1915, plaintiff and defendant entered into the following agreement which was to begin December 31, 1914, and continue for one year until December 31, 1915:

" This agreement, made the 18th day of May, in the year one thousand nine hundred and fourteen, between Trans-Atlantic Novelty Co., Inc., a corporation duly organized and existing under and by virtue

of the laws of the State of New York, party of the first part, and Jacques Broder, of number 68 Lenox Avenue, Borough of Manhattan, City and State of New York, party of the second part,

" *Witnesseth:*

" *First.* That the party of the first part hereby employs the party of the second part as a traveling salesman, for the period beginning May 18th, 1914, and ending December 31, 1914, upon the terms and conditions hereinafter mentioned; and the party of the second part hereby agrees to enter into the employ of the party of the first part upon such terms and conditions and agrees to devote his entire time and attention to the business of the party of the first part, and under its general supervision and direction.

" *Second.* It is expressly understood and agreed that the party of the second part shall receive a commission of ten per cent. on all sales made by him of merchandise, and on all re-orders thereof, in the territory assigned to the party of the second part, provided that such orders and re-orders are satisfactory to the party of the first part and accepted by it; except that the party of the second part shall be entitled only to a commission of five per cent. on sales of goods sold on orders or re-orders on ' syndicate '' sales, meaning thereby sales to parties conducting five and ten cent stores or other parties who purchase for premium or mail order business, both of which classes buy from a special price list provided for them.

" *Third.* It is expressly understood and agreed that the party of the second part shall have the right to sell in the territory which shall be assigned by the party of the first part to him, and in no other, except with the express authority and consent in writing of the party of the first part.

" *Fourth.* It is also understood and agreed that all orders for goods, obtained by the party of the second part, shall be subject to the approval and acceptance of the party of the first part, and he shall be entitled to commissions only after such order or orders have been accepted by the party of the first part and the goods shipped, and shall not be entitled to any commission on orders which shall be cancelled after acceptance by the party of the first part. The party of the first part will, however, advance to the party of the second part one-half of commissions on any order, upon acceptance of such orders, but the party of the first part shall not be liable to pay commissions on any orders which it is unable to fill by reason of not having stock on hand, or by reason of strikes, or for any other reason which may render the party of the first part unable to manufacture or deliver the goods.

" *Fifth.* In the event of any account for which the party of the second part shall have taken orders, proving uncollectible, the commission on such orders is to be charged to the account of the party of the second part and shall be forthwith refunded to the party of the first part by him.

" *Sixth.* In the event that the party of the second part shall sell merchandise or obtain orders for same, which is not ready for immediate delivery, but delivery thereof is fixed for some future time, the commissions above mentioned shall be payable one-half at the time that the order is accepted by the party of the first part, and the other half upon the shipment of goods called for by said order.

" *Seventh.* It is hereby further mutually understood and agreed that the party of the first part shall advance to the party of the second part against the commissions to be earned by him, the sum of Fifty

($50) Dollars per week, in advance, while the party of the second part shall be, in the City of New York, and the sum of One hundred and Fifty ($150) Dollars per week while the party of the second part shall be traveling; the sum of One Hundred ($100) Dollars thereof being for the traveling expenses of the party of the second part. All amounts advanced, either for drawing account, or for expenses, as above set forth, shall be deducted from the amount of the commissions earned by the party of the second part, as they may appear on the monthly statements to be made by the party of the first part to the party of the second part.

" *Eighth.* The party of the second part hereby expressly undertakes and agrees that he will not, during the term of employment herein mentioned, enter into the employ of any person, firm or corporation engaged in the same or similar line of business.

" *Ninth.* The party of the first part hereby reserves the right to change the territory assigned to the party of the second part, at any time, as in its judgment it may deem best.

" *Tenth.* It is further mutually understood and agreed that upon the termination of this contract, and in the event that a new contract is renewed between the parties, any deficiency arising by advances or payments for any cause, made to the party of the second part, which may exceed the commissions earned by the party of the second part, shall be charged against the party of the second part and shall be an indebtedness against any future commissions earned under said renewed contract, if any, and in all events any such deficiency shall be charged and be a debt against the party of the second part which deficiency the party of the second part promises and agrees to repay and return to the party of the first part."

This contract was made originally May 18, 1914, for the period intervening between its date and December 31, 1914, and was renewed verbally on January 4, 1915. Plaintiff entered upon the discharge of his duties pursuant to its provisions, sold goods and procured orders for goods, and so far as the record shows fully performed all the terms of the contract upon his part until May 18, 1915, when defendant discharged him without cause.

Plaintiff brings this action for damages for such discharge and claims to be entitled to recover upon the case made out the sum of fifty dollars a week drawing account for the unexpired term of the contract up to December 31, 1915. Plaintiff was the only witness called. He testified to the contract, to the performance of its provisions, to the sale of goods, to the payments made and to the amount of his weekly drawing account still unpaid, and rested. The court dismissed the action upon the ground that the plaintiff had failed to make out a case.

It is conceded that were it not for the 10th paragraph of the contract, which requires the repayment by plaintiff of any excess of payments to him on his drawing account over the amount of commissions earned, the plaintiff would have made out a *prima facie* case for the unpaid drawing account. The claim is made by the defendant that by reason of the 10th paragraph of the contract the plaintiff was required to prove what commissions he had earned, or facts which would form a legal basis upon which the amount of his future commissions might be reasonably estimated. The court evidently took this view of the case, and we think erred in so doing.

The contract contemplated that the accounts should be settled at the expiration of the contract period, and at that time only could the plaintiff be required to

repay the excess of drawings over the amount of commissions earned. The plaintiff was entitled to an opportunity during the entire term of his contract to earn commissions. He was deprived of this opportunity by the wrongful act of the defendant in discharging plaintiff.

The contract, in effect, provided for the payment of wages in advance. The defendant has measured the probable minimum of the commissions the plaintiff would have earned at fifty dollars a week. *Laird* v. *Carton*, 196 N. Y. 169.

Plaintiff was entitled, under his contract, to at least the sum of fifty dollars a week until the end of the contract term, at which time it could be definitely determined what the respective rights of the parties were and their accounts adjusted accordingly. The defendant, by its own wrong, has put it out of the power of the plaintiff to prove absolutely what the amount of his commissions would have been, and the evidence of exactly what prior commissions were earned by plaintiff is exclusively within the possession of defendant. The burden, therefore, is upon the defendant to show that the commissions earned by the plaintiff would not have amounted to as much as the drawing account.

The defendant has set up two counterclaims alleging payments in excess of commissions earned, and the burden is upon it to sustain them.

The case, we think, comes directly within the decision of *Gifford* v. *Waters*, 67 N. Y. 80, and the provisions of paragraph 10 of the contract, requiring the plaintiff to pay back excess of drawing account over commissions earned, does not take it out of the rule laid down in the cases of *Laird* v. *Carton* and *Gifford* v. *Waters, supra.*

The statement in the defendant's brief " that the

plaintiff testified that at the time of his discharge he was overdrawn '' is incorrect.

The testimony is that a certain book which the defendant claims to have kept, and which was not put in evidence, tended to show that plaintiff had overdrawn. The plaintiff subsequently expressly testified that he told defendant that he was not overdrawn, and that Bergman said to plaintiff, '' you don't owe me nothing.'' And again plaintiff testified that he told Mr. Bergman that according to plaintiff's sales he owed defendant nothing, but defendant owed him, the plaintiff.

The judgment should be reversed and a new trial ordered, with costs to the appellant to abide the event.

LEHMAN and FINCH, JJ., concur.

Judgment reversed and new trial ordered, with costs to appellant to abide event.